IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H:09-03400 |
| § | |
| 1,000 FLAT IRONS, § | |
| 120 HAIR DRYERS, and 120 HAIR § | |
| DRYER DIFFUSERS, § | |
| § | |
| Defendants, § | |
| § | |
| v. § | |
| § | |
| BRELIAN, INC., § | |
| § | |
| Claimant. § | |
| § | |
| FAROUK SYSTEMS, INC., § | |
| § | |
| Intervenor-Plaintiff, § | |
| § | |
| v. § | |
| § | |
| SHI SALON, LLC, BRELIAN, INC., § | |
| SHIVA LABORATORIES, INC., § | |
| FRANK TAVAKOLI, SALON WHOLESALERS § | |
| & DISTRIBUTORS, INC., and § | |
| MAJID JAMEOSSANAYE, § | |
| § | |
| Defendants. § | |
| § | |

**MEMORANDUM OPINION**

Pending before the court[1] is Farouk Systems, Inc.'s ("FSI")

Motion for Summary Judgment against SHI Salon, LLC; Brelian, Inc.;

Shiva Laboratories, Inc.; Frank Tavakoli ("Tavakoli"); Salon

Wholesalers & Distributors, Inc; and Majid Jameossanaye

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docs. 14, 19, 32, 51.

("Jameossanaye") (collectively "Defendants") (Doc. 37).

The court has considered the motion, all relevant filings, and the applicable law.   For the reasons set forth below, the court **DENIES** FSI's Motion for Summary Judgment.

## I.   Case Background

### A.   Procedural History

Plaintiff United States of America initiated this forfeiture action against 1,000 Flat Irons, 120 Hair Dryers, and 120 Hair Dryer Diffusers on October 21, 2009.[2]  On December 22, 2009, FSI filed a separate complaint against SHI Salon, LLC, Brelian, Inc., Shiva Laboratories, Inc., and Tavakoli, which was later consolidated into the present action.[3]  On September 23, 2010, the court granted leave for FSI to file its First Amended Complaint, which added Jameossanaye and Salon Wholesalers & Distributors, Inc.[4]  The First Amended Complaint alleges that Defendants: (1) infringed on FSI's trademark rights in the mark "CHI"; (2) engaged in unfair competition; (3) diluted FSI's trademark rights in the mark "CHI"; and (4) engaged in civil conspiracy to infringe and dilute FSI's trademark rights in the mark "CHI" and to unfairly compete against FSI.[5]

---

[2]    See Doc. 1, Compl. for Forfeiture in Rem.

[3]    See Doc. 15, FSI's Mot. to Intervene, p. 2.

[4]    Doc. 27, Minute Entry Dated Sept. 23, 2010; see also Doc. 25, FSI's Am. Compl.

[5]    Doc. 25, FSI's Am. Compl., pp. 8-13.

2

Discovery in this action closed on February 15, 2011, and the deadline to file dispositive motions was March 11, 2011.[6] FSI filed the pending motion for summary judgment on March 28, 2011, and SHI Salon, LLC, Brelian, Inc., Shiva Laboratories, Inc., Tavakoli and Salon Wholesalers and Distributors, Inc., filed their response.[7] Jameossanaye followed with a late-filed substantively identical response on April 13, 2011, after FSI had replied to the other defendants' response.[8]

The parties agreed to a bench trial on all claims.

**B.   Factual History**

FSI received a federal registration for the trademark "CHI" in 2002 for electric hair curling irons.[9] FSI has used the mark "CHI" on its hair care products sold in commerce since 2002.[10] FSI is the owner of two other trademark registrations covering the use of "CHI" for hair dryers and hair coloring products.[11]   Other trademarks associated with FSI's hair care products and equipment

---

[6]   <u>See</u> Doc. 20, Scheduling Order.

[7]   <u>See</u> Doc. 37, Mot. for Summ. J.; Doc. 39, SHI Salon, LLC, Brelian, Inc., Shiva Labs., Inc., Tavakoli, & Salon Wholesalers & Distribs., Inc.'s Resp. to FSI's Mot. for Summ. J. ("Defs.' Resp.").

[8]   <u>See</u> Doc. 45, Jameossanaye's Resp. to FSI's Mot. for Summ. J.  Because the brief is substantively identical to the other defendants' response and cites to the evidence attached thereto, the court finds no reason to cite Jameossanaye's response in the remainder of this opinion.

[9]   Doc. 38-1, Ex. A to FSI's Mem. in Support of FSI's Mot. for Summ. J. ("FSI's Mem."), Decl. of Gregg Emery ("Emery") ¶ 3.

[10]   <u>Id.</u> at ¶ 8.

[11]   <u>See</u> <u>id.</u> at ¶¶ 4-5.

3

that incorporate "CHI" include CHI Nano, CHI Turbo, and Ultra CHI.[12]

According to Gregg Emery ("Emery"), FSI's executive vice president of sales, FSI has used the trademark "CHI" in connection with a wide variety of hair care products, including hair dryers, hair color lighteners, color lock treatments, color developers, colors, hair irons, shampoo, thermal hair protective treatment, hair strengthening treatment, hair conditioner, bonding solutions, solutions that "transform frizzy, curly, or damaged hair," hair brushes, and hair combs.[13]

FSI initially sold its products to salons and stylists but, more recently, expanded sales directly to nonprofessional users.[14] Emery identifies FSI customers as "individuals seeking hair straightening, curling[] and styling irons, hair dryers, and hair care preparations[,] such as shampoos and conditioners, for home and salon use."[15]  FSI advertises its "CHI" products on signs at salons and beauty supply stores, on the internet, and in trade magazines.[16]

In 1984, Tavakoli began working in the service aspect of hair care, and, in 1990, branched out to manufacturing and production.[17]

---

[12]  See id. at ¶¶ 6-7.

[13]  Id. at ¶¶ 4-8.

[14]  Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Tavakoli, ¶ 4.

[15]  Doc. 38-1, Ex. A to FSI's Mem., Decl. of Emery, ¶ 22.

[16]  Id. at ¶ 23.

[17]  Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Tavakoli, ¶ 1.

He is a principal in the defendant entities.[18]  Brelian, Inc., at one time, owned more than 125 TGF Haircutters salons.[19]

After FSI adopted its mark "CHI" for numerous hair care products and with knowledge of the "CHI" mark, Defendants began using the mark "SHI" on hair care products, services, and equipment.[20]  Tavakoli denied any intention of palming off the "SHI" products as "CHI" products and explained, instead, that the name is a shorten version of the mark "SHIVA," which is used by Defendants on other products and is the name of Tavakoli's daughter.[21] Tavakoli asseverated that shopping centers where the salons are located restrict the size of signs, motivating the use of a shorter name.[22]

Brelian, Inc., imported the hair irons, hair dryers, and hair diffusers bearing the mark "SHI" that were seized by U.S. Customs and Border Protection in 2009.[23]  Tavakoli also operates SHI Salon,

---

[18]     Id. at ¶ 3.

[19]     Id. at ¶ 2.

[20]     See Doc. 38-1, Ex. A to FSI's Mem., Decl. of Emery, ¶ 10.  Based on the 2008 date of the "SHI" ITU applications, Emery postulates that Defendants did not begin using the "SHI" mark until the latter portion of 2008, at the earliest. See id.; Doc. 38-3, Exs. B-1 through B-4 to FSI's Mem., SHI Salon, LLC, Brelian, Inc., Shiva Labs., Inc., & Tavakoli's Resps. to FSI's Reqs. for Admis., Nos. 8-11.

[21]     Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Tavakoli, ¶ 7.

[22]     Id.

[23]     See Doc. 1, Compl. for Forfeiture in Rem.; Doc. 38-1, Ex. A to FSI's Mem., Decl. of Emery, ¶ 11.

LLC, and Salon Wholesalers & Distributors, Inc.[24]   These two companies offer for sale hair irons, hair dryers, hair razors, hair cutters, shampoo, hair care "preparations," and salon services under the mark "SHI."[25]   Sales are made to the general public and hair care professionals through salons and beauty supply stores.[26] Shiva Laboratories, Inc., manufacturer of "SHI" liquid hair care products, sells "SHI" products online through multiple websites.[27] Jameossanaye is a former salaried employee who performed information technology services for the Tavakoli-run companies.[28]

Defendants focus marketing of hair irons and hair blowers to salons and stylists or to attendees at salon conventions while marketing hair care products, such as shampoo, to barber shops.[29] They also advertise on signs in salons, on the internet, and in trade magazines and circulars.[30]   When marketing, Defendants

---

[24]   Doc. 38-1, Ex. A to FSI's Mem., Decl. of Emery, ¶¶ 12, 14; Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Tavakoli, ¶ 3.

[25]   Doc. 38-1, Ex. A to FSI's Mem., Decl. of Emery, ¶¶ 12, 14; see also Doc. 38-4, Ex. B-6 to FSI's Mem., SHI Salon, LLC, Brelian, Inc., Shiva Labs., Inc., & Tavakoli's Answers to Interrogs., No. 13 (stating that the mark "SHI" is on "a full line of hair care products, including a soft flex neck rest, hot razor, hair dryer and diffuser, flat iron and wet goods").

[26]   Doc. 38-4, Ex. B-6 to FSI's Mem., SHI Salon, LLC, Brelian, Inc., Shiva Labs., Inc., & Tavakoli's Answers to Interrogs., No. 12; Doc. 38-4, Ex. B-7 to FSI's Mem., SHI Salon, LLC, Brelian, Inc., Shiva Labs., Inc., & Tavakoli's Supplemental Answers to Interrogs., No. 11; Doc. 38-1, Ex. A to FSI's Mem., Decl. of Emery, ¶¶ 21-22.

[27]   Doc. 38-1, Ex. A to FSI's Mem., Decl. of Emery, ¶ 13.

[28]   Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Tavakoli, ¶ 12.

[29]   Id. at ¶¶ 5, 6.

[30]   See Doc. 38-4, Ex. B-6 to FSI's Mem., Interrogs., No. 11; see also Doc. 38-4, Ex. B-7 to FSI's Mem., Interrogs., No. 13.

pronounce "SHI" by its three separate letters, as in "S," "H," "I."[31]

Tavakoli has filed three U.S. Trademark Applications on the "SHI" mark for electric hair curling irons, electric hair straightening irons, electric irons for styling hair, hair dryers, and hair care preparations.[32]  All of Tavakoli's applications were filed as "intent-to-use" ("ITU") applications on August 24, 2008, and Defendants did not sell any hair care product labeled with the "SHI" mark until that date.[33]  FSI has opposed all of Tavakoli's ITU applications, and the opposition proceeding has been suspended pending the outcome of this action.[34]

## II.  <u>Standard of Review for Summary Judgment</u>

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet</u>

---

[31]   Doc. 39-1, Ex. A to Defs.' Resp., Decl. of Tavakoli, ¶ 7.

[32]   Doc. 38-1, Ex. A to FSI's Mem., Decl. of Emery, ¶ 10.

[33]   <u>Id.</u>; Doc. 38-4, Ex. B-6 to FSI's Mem., SHI Salon, LLC, Brelian, Inc., Shiva Labs., Inc., & Tavakoli's Answers to Interrogs., No. 13.

[34]   Doc. 38-1, Ex. A to FSI's Mem., Decl. of Emery, ¶ 10.

<u>Charter, Inc. v. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Anderson</u>, 477 U.S. at 250; <u>TIG Ins. Co. v. Sedgwick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002).  The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence."  <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

Because this case will be tried to the bench, the court possesses "somewhat greater discretion" in deciding what weight to accord summary judgment evidence.  <u>Johnson v. Diversicare Afton Oaks, LLC</u>, 597 F.3d 673, 676 (5th Cir. 2010)(quoting <u>In re Placid</u>

Oil Co., 932 F.2d at 394, 397 (5th Cir. 1991)).  That discretion, however, is limited to deciding that the same evidence, if presented at trial, "could not possibly lead to a different result."  Johnson, 597 F.3d at 676 (quoting In re Placid Oil Co., 932 F.2d at 398).  The court should only exercise its discretion and avoid the expense of a trial when "a trial on the merits will not enhance the court's ability to draw inferences and conclusions."  In re Placid Oil Co., 932 F.2d at 398.

### III.  Analysis

FSI moves for summary judgment in its favor on all of its claims: trademark infringement, unfair competition, dilution, and conspiracy.

### A.  Trademark Infringement

The Lanham Act protects federally registered marks from unauthorized use that "is likely to cause confusion, or to cause mistake, or to deceive" and protects unregistered words, terms, or names from use in commerce that "is likely to cause confusion, or to cause mistake, or to deceive" as to the origin of goods.  15 U.S.C. §§ 1114(1)(a); 1115(a)(1)(A).[35]  To recover on a claim of

---

[35]   Section 1114(1) of Title 15 of the United States Code reads in part:

(1)   Any person who shall, without the consent of the registrant:

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels,

trademark infringement under the Lanham Act, a plaintiff must show that: 1) the mark is legally protectable; and 2) infringement has occurred.  Am. Rice, Inc. v. Producers Rice Mill, Inc., 518 F.3d 321, 329 (5th Cir. 2008).

Texas common law similarly provides a remedy for trade name infringement to the senior user of a mark when the mark is protectable and there is a likelihood of confusion between that mark and the alleged infringing mark.  Thompson v. Thompson Air Conditioning & Heating, Inc., 884 S.W.2d 555, 558 (Tex. App.–Texarkana 1994, no writ).  "The issues in a common law

---

> signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

Section 1125(a)(1) of Title 15 of the United States Code reads in full:

(a) Civil action
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

10

trademark infringement action under Texas law are no different than those under federal trademark law." All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc., 991 S.W.2d 484, 488 (Tex. App.–Fort Worth 1999, no pet.).

The plaintiff has the burden of proof on both protectability and infringement. See CICCorp., Inc. v. AIMTech Corp., 32 F.Supp. 2d 425, 434 (S.D. Tex. 1998). Regarding the former, federal registration of the trademark is prima facie evidence of the registrant's exclusive right to use the mark, but trademark ownership is really established through use, not registration. 15 U.S.C. § 1115(a); Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co., 550 F.3d 465, 475 (5th Cir. 2008); Union Nat'l Bank of Tex., Laredo, Tex. v. Union Nat'l Bank of Tex., Austin, Tex., 909 F.2d 839, 842 (5th Cir. 1990). "The first one to use a mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it, subject to limits imposed by the senior user's market and natural area of expansion." Union Nat'l Bank of Tex., Laredo, Tex., 909 F.2d at 842-43; see also BankTEXAS, N.A. v. First Bank, No. 05-96-00497-CV, 1998 WL 12658, *2 (Tex. App.–Dallas 1998, no pet.)(unpublished)("An enforceable right to a trademark is acquired at common law by the person who first adopts and uses it in a particular geographic area.").

Likelihood of confusion, which is the paramount question in trademark infringement cases, means more than a mere possibility; the plaintiff must demonstrate a probability of confusion. Xtreme

11

<u>Lashes, LLC v. Xtended Beauty, Inc.</u>, 576 F.3d 221, 226 (5th Cir. 2009).  In evaluating whether a likelihood of confusion exists, the Fifth Circuit has identified eight factors that a court should consider: "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendants' intent; (7) actual confusion; and (8) care exercised by potential purchasers." <u>Id.</u> at 227 (citing <u>Smack Apparel Co.</u>, 550 F.3d at 478).  No factor is dispositive, and each may warrant more or less weight in the analysis depending on the particular facts of the case.  <u>See</u> <u>Xtreme Lashes, LLC</u>, 576 F.3d at 227.  "[L]ikelihood of confusion is typically a question of fact." <u>Id.</u> at 227.  Summary Judgment is proper only if the "record compels the conclusion that the movant is entitled to judgment as a matter of law." <u>Id.</u> (quoting <u>Smack Apparel Co.</u>, 550 F.3d at 474).

**1.    Trademark Protection**

FSI claims that Defendants infringed on its trademark rights in "CHI."  Other than a brief reference to FSI "persistently tr[ying] to extend its registration to non-registered items," Defendants do not challenge FSI's assertion that the "CHI" mark is legally protectable or that "CHI" is more senior than "SHI."

It is undisputed that FSI has obtained several federal trademark registrations for the mark "CHI," at least one as early as December 2002.  Although registration is prima facie evidence of an exclusive right to use the registered mark, FSI's actual use of the mark "CHI" is the source of trademark protection.  <u>See</u> <u>Smack</u>

<u>Apparel Co.</u>, 550 F.3d at 475; <u>Union Nat'l Bank of Tex., Laredo,</u>
<u>Tex.</u>, 909 F.2d at 842.  The evidence shows that FSI has used "CHI"
to market a wide variety of hair care products.[36]  FSI, as owner of
the more senior mark "CHI," is entitled to prevent others from
using the same or deceptively similar marks within its current
business market and natural areas of expansion.  <u>See</u> <u>Union Nat'l</u>
<u>Bank of Tex., Laredo, Tex.</u>, 909 F.2d at 842-43.

To that extent, the mark "CHI" is protectable.

### 2.   Likelihood of Confusion

FSI claims there is a likelihood of confusion between its mark
"CHI" and the mark "SHI."  Although SHI Salon, LLC, and Brelian,
Inc., admitted that they are in competition with FSI,[37] Defendants
argue that "SHI" products are not similar to "CHI" products and
that genuine disputes exist as to material facts.  Defendants focus
their opposition on the following five of the eight "likelihood of
confusion" factors: similarity of the marks; outlet and purchaser
identity; intent; actual confusion; and care exercised by potential
customers.  The court analyzes all eight factors.

### a.   Type of Trademark

This factor requires consideration of the strength of the
allegedly infringed mark, granting stronger marks greater

---

[36]    Defendants objected to the declaration of Don M. Malone ("Malone")
because he testified about products not covered by FSI's federally registered
trademarks.  <u>See</u> Doc. 40, SHI Salon, LLC, Brelian, Inc., Shiva Labs., Inc.,
Tavakoli, and Salon Wholesalers & Distribs., Inc.'s Mot. to Strike Affs., p. 9.
Because a claim of infringement is based on use, not merely registration, the
court finds Malone's testimony to be admissible and relevant.  The court
**OVERRULES** Defendants' objection.

[37]    Doc. 38-3, Exs. B-1 through B-2 to FSI's Mem., SHI Salon, LLC,
Brelian, Inc.'s Resps. to FSI's Reqs. for Admis., No. 16.

protection.  See Xtreme Lashes, LLC, 576 F.3d at 227.  Contributing
to the strength of a mark is its distinctiveness.  Id.; see also
Lyons P'ship v. Giannoulas, 179 F.3d 384, 389 (5th Cir.
1999)(explaining that distinctiveness refers to the consumer's
ability to identify a product's source).  Marks are categorized on
a continuum of increasing distinctiveness from generic to
arbitrary.  Xtreme Lashes, LLC, 576 F.3d at 227.  Other factors,
such as length of time in the marketplace and extent of
advertising, are relevant to the strength of a trademark.  See
Moore Bus. Forms v. Ryu, 960 F.2d 486, 490 (5th Cir. 1992).

Based on the affidavit of its own executive vice president,
FSI asserts, "It is indisputable that FSI's mark CHI[] is
arbitrary, strong, and highly distinctive of FSI's hair care
products."[38]  Defendants do not address this factor in their
responses.  SHI Salon, LLC, Brelian, Inc., Shiva Laboratories,
Inc., and Tavakoli did admit that the trademark "CHI" on hair
irons, hair dryers, and shampoo indicates that FSI is the source of
the products.[39]  Additionally, FSI has used the mark "CHI" in
interstate commerce since 2002 and has advertised the mark
extensively.[40]

Although some evidence of a strong mark, FSI's own opinion

---

[38]     Doc. 38, FSI's Mem., p. 16 (citing Doc. 38-1, Ex. A to FSI's Mem.,
Decl. of Emery, ¶ 9).

[39]     See Doc. 38-3, Exs. B-1 through B-4 to FSI's Mem., SHI Salon, LLC,
Brelian, Inc., Shiva Labs., Inc., & Tavakoli's Resps. to FSI's Reqs. for Admis.,
Nos. 24, 35, 46.

[40]     Doc. 38-1, Ex. A to FSI's Mem., Decl. of Emery, ¶ 8.

that it is an arbitrary designation, even in combination with the admissions and use history, is paltry evidence on which to base a decision that the "CHI" mark deserves the greatest protection available.  At the bench trial, the court will make credibility determinations and weigh factors of distinctiveness in deciding what level of protection the "CHI" mark warrants.

> **b.   Mark Similarity**

The similarity of marks is based on a comparison of their appearances, sounds and meanings.  <u>Xtreme Lashes, LLC</u>, 576 F.3d at 228.  "Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features."  <u>Id.</u> (quoting <u>Amstar Corp. v. Domino's Pizza, Inc.</u>, 615 F.2d 252, 260-61 (5th Cir. 1980)).  Ultimately, the issue is whether a reasonable consumer could believe the two marks have a common source or origin.  <u>See</u> <u>Xtreme Lashes, LLC</u>, 576 F.3d at 229.

Obviously, the only spelling difference between "CHI" and "SHI" is one letter.  While a one letter difference may seem minute on its own, the difference should be considered by its effect on the mark as a whole.  A one letter difference almost certainly has greater effect on a mark consisting of only three letters than it would on a mark containing, for example, ten letters.

Representation of the marks also differs in that the "S" in "SHI" is stylized and the cross bar of the "H" sits below the midway point of the two vertical lines while the "CHI" registrations state that "the mark consists of standard characters

without claim to any particular font, style, size, or color." Defendants submitted one representation of "CHI" in which all three letters are in a traditional sans serif, block typeface with the crossbar of the "H" centered on its vertical legs and the words "CATIONIC HYDRATION INTERLINK" written across the three letters.

Moreover, the parties suggest multiple possible pronunciations for both marks. Defendants claim that, when marketing, they pronounce "SHI" as "S""H""I." But unaware consumers may pronounce it like the words "she" and "shy." "CHI" has similar possible pronunciations ("chee" and "chai"), as well as pronunciation like the Greek letter of the same spelling or the first three letters of "Chicago." FSI offers no evidence on its own or its consumers' pronunciation of "CHI."

As far as meaning, Defendants claim that "SHI" is a shortened version of Tavakoli's daughter's name. The representation of "CHI" submitted by Defendants suggests that "CHI" stands for "CATIONIC HYDRATION INTERLINK." Consumers are unlikely to surmise either meaning from the marks themselves.

Without hearing additional evidence, the court is unable to determine whether consumers would believe that products bearing these two marks have a common source. Therefore, the court must wait until trial to make this finding of fact.

### c. Product Similarity

It is axiomatic that greater similarity between products elicits a greater likelihood of confusion. <u>Xtreme Lashes, LLC</u>, 576 F.3d at 229 (citing <u>Exxon Corp. v. Tex. Motor Exch. of Houston,</u>

Inc., 628 F.2d 500, 505 (5th Cir. 1980)).  Defendants, like FSI,
sell hair care equipment and products, including hair irons, hair
dryers, and liquid goods.  The overlap in products and services
appears to be extensive but not absolute.  Although it appears
unquestionable that a great degree of similarity exists between FSI
and Defendants' products, the court will determine how much weight
to afford this factor in relation to the other seven after the
presentation of evidence at trial.

          d.   **Outlet and Purchaser Identity**

     As with the other factors, similarity in sales outlets and
purchasers raises the likelihood of confusion.  See Amstar Corp.,
615 F.2d at 262.

     FSI's evidence does not specify the outlets for FSI sales.[41]
Tavakoli asseverated that FSI recently broadened sales from only
salons and stylists to the general public.  Emery defined FSI's
target customer as individuals seeking the variety of hair care
products that they sell for home and salon use.

     Defendants sell their products at salons and beauty supply
stores to both professional and nonprofessional consumers.  They
also sell products via the internet.  Tavakoli postulated that
salon owners and stylists are knowledgeable consumers who make the
purchases in the context of selecting tools for their craft.

---

          [41]     FSI cites to Emery's declaration as stating that FSI sells "CHI"
products "through salons and authorized beauty supply stores."  Doc. 38, FSI's
Mem., p. 19 (citing Doc. 38-1, Ex. A to FSI's Mem., Decl. of Emery, ¶ 22).  Emery
actually states that Defendants, not FSI, sell their products through Defendants'
hair care salons and beauty supply stores.  Doc. 38-1, Ex. A to FSI's Mem., Decl.
of Emery, ¶ 22.

In a very general sense, FSI and Defendants both sell to individuals seeking hair care products.  More specifically, they both sell to hair stylists and to the general public.  Without more detailed information about the sales outlets, including whether both "CHI" and "SHI" products are for sale at the same salons or beauty supply stores, the court cannot formulate an opinion as to how significant the likelihood of confusion is based on this factor.

### e.   Advertising Media Identity

Marketing of the two products through similar advertising media is another consideration in the likelihood-of-confusion analysis.  See Xtreme Lashes, LLC, 576 F.3d at 229.

Both FSI and Defendants advertise on signs in salons, on the internet, and in trade magazines.  In addition to those channels, FSI advertises in beauty supply stores, while Defendants use circulars and market their products at salon conventions.

Absent absolute identity in advertising media, the court declines to decide on summary judgment how much weight to give this particular factor in terms of the likelihood of confusion.

### f.   Defendants' Intent

Intent can provide compelling evidence of a likelihood of confusion.  See Am. Rice, Inc., 518 F.3d at 332.  The focus of the intent inquiry is whether the later-used mark was adopted with the intent to gain benefit from the earlier mark's reputation.  See id.

Defendants were aware of the "CHI" mark and branded products prior to their use of "SHI" on hair care equipment and products.

18

Additionally, they sell a hair iron and a hair dryer labeled "SHI TURBO," despite FSI's use of "CHI Turbo" on hair irons and its registration of the mark "CHI TURBO" for hair brushes and combs. On the "SHI TURBO" products, a registered trademark symbol sits next to "SHI," despite Defendants' lack of federal registration. Yet, Tavakoli denied any intent to trade off of FSI's reputation and claimed that Defendants chose the mark SHI for reasons related to another of its product names and practical considerations.

Without a doubt, this factor turns on Tavakoli's credibility, which the court cannot assess on affidavit. An inference of intent is neither compelled by the evidence presented nor appropriate on summary judgment.

### g.   Actual Confusion

"Actual confusion need not be proven, but if consumers have confused the junior mark for the senior mark, this is the best evidence of a likelihood of confusion." Xtreme Lashes, LLC, 576 F.3d at 229 (quotation marks omitted)(quoting Smack Apparel, 550 F.3d at 483).

FSI points to the results of a Google search for "SHI Hair Irons," which directed users to many websites offering "CHI" products.[42] Contrary to FSI's assertion, the search results are not evidence of actual confusion between the two products by consumers. Rather, it merely suggests an opportunity for confusion. Tavakoli testified that Defendants have not received any correspondence indicating confusion between the marks, have not experienced

---

[42]     See Doc. 38-4, Ex. B-8 to FSI's Mem., Google.com Search Results.

19

attempts by customers to return "CHI" products to "SHI" outlets, have not received orders for "CHI" products, and have not fielded inquiries about any association between the two marks.[43]

Absent any evidence of actual confusion, the court cannot assign this factor any weight in FSI's favor.

### h.   Care Exercised by Potential Purchasers

The focus of this factor is on the price of the allegedly infringing products.   Consumers tend to spend less time and exercise less care in selecting a relatively inexpensive item, which increases the likelihood of confusion.   See Xtreme Lashes, LLC, 576 F.3d at 231 (quoting Smack Apparel Co., 550 F.3d at 483).

This factor has little significance in this case.   At thirty to forty-five dollars, Defendants' "SHI" branded hot razors, dryers, and flat irons seem to fall in the middle ground in terms of the amount of care a consumer is likely to exercise.   If the parties present additional evidence at trial, the court will consider the importance of this factor at that time.

### 3.  Conclusion

As the court finds multiple issues that require the court to weigh evidence and draw inferences, the summary judgment record fails to compel a conclusion in FSI's favor on its trademark infringement claim.

## B.  Unfair Competition

As with trademark infringement, an unfair competition claim hinges on whether the similarity between the marks creates a

---

[43]

likelihood of confusion.  <u>Marathon Mfg. Co. v. Enerlite Prods.</u> <u>Corp.</u>, 767 F.2d 214, 217 (5th Cir. 1985)(stating that, generally, the same facts would support both an infringement claim and an unfair competition claim).

Because the court cannot decide on summary judgment whether "SHI" is so similar to "CHI" as to create confusion for purposes of the infringement claim, the court also must postpone consideration of the unfair competition claim until trial.

**C.    Dilution**

Under Texas law:

A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services.

Tex. Bus. & Comm. Code Ann. § 16.29.  Anti-dilution statutes like this one generally protect only well-recognized marks.  <u>Exxon Corp.</u> <u>v. Oxxford Clothes, Inc.</u>, 109 F.3d 1070, 1081 n.14 (5 [th] Cir. 1997)(applying Texas law and quoting <u>Accuride Int'l, Inc. v.</u> <u>Accuride Corp.</u>, 871 F.2d 1531, 1539 (9th Cir. 1989)).  A successful claim of dilution requires proof of 1) ownership of a distinctive mark, and 2) a likelihood of dilution.  <u>Horseshoe Bay Resort Sales</u> <u>Co. v. Lake Lyndon B. Johnson Improvement Corp.</u>, 53 S.W.3d 799, 811 (Tex. App.–Austin 2001, pet. denied).  To be distinctive, a mark must be unique or have a secondary meaning.  <u>Id.</u> at 812.

Dilution can be caused by blurring or by tarnishing.  <u>Scott</u> <u>Fetzer Co. v. House of Vacuums, Inc.</u>, 381 F.3d 477, 489 (5th Cir.

2004)(applying federal and Texas law).   Blurring refers to "a
diminution in the uniqueness or individuality of the mark because
of its use on unrelated goods," and tarnishing refers to an injury
caused by another's use of the mark on "products of shoddy quality"
or in an "unwholesome or unsavory context with the result that the
public will associate the lack of quality or lack of prestige in
the defendant's goods with the plaintiff's unrelated goods."  Id.
(quotation marks omitted)(quoting Hormel Foods Corp. v. Jim Henson
Prods., 73 F.3d 497, 507 (2$^d$ Cir. 1996)).

        FSI argues that its mark is distinctive and that "SHI"
products are inferior to "CHI" products and, therefore, denigrate
the goodwill associated with the "CHI" mark.   Additionally, FSI
argues that, because "SHI" "is nearly identical in sight, sound,
and commercial impression" to "CHI," its use "lessens the
distinctive nature" of the "CHI" mark.

        As to the first argument, which falls under tarnishing, FSI
produced no evidence even remotely suggesting that "SHI" products
are inferior.   Masquerading as evidence is Emery's opinion that
Defendants' products are inferior.[44]   FSI will need more evidence
than Emery's conclusory opinion to be successful on its tarnishing
claim at trial.

        As to the second argument, FSI relies, in its reply, on Pebble
Beach, Co. v. Tour 18 I Ltd., 942 F.Supp. 1513 (S.D. Tex. 1996),
aff'd as modified, 155 F.3d 526 (5th Cir. 1998), abrogated on other
grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S.

---

[44]        See Doc. 38-1, Ex. A to FSI's Mem., Decl. of Emery, ¶ 20.

23, 32-33 (2001)), for the proposition that blurring can occur when the parties' respective products are identical.  In Pebble Beach Co., the defendant built a golf course that replicated holes from numerous famous golf courses around the United States.  942 F.Supp. at 1527.  The defendant named each hole after the course from which it was designed, with one of the holes being "Pebble Beach 14." Id. at 1527, 1528.  The court found that, although the parties offered competitive products, the Texas anti-dilution state applied.  Id. at 1564.

Pebble Beach Co. is distinguishable from the facts before this case because it involved the use of an identical mark on the same product or service.  The issue here involves a similar, not identical, mark on the same and similar products.  Regardless, FSI has not shown through competent summary judgment evidence that Defendants use of the "SHI" mark has increased the likelihood of dilution through weakening the distinctiveness of the "CHI" mark.

Accordingly, the court finds FSI has failed to establish dilution as a matter of law.  FSI is not entitled to summary judgment on this claim.

**D.  Conspiracy**

Civil conspiracy requires proof of the following elements: "1) two or more persons; 2) an object to be accomplished; 3) a meeting of the minds on the object or course of action; 4) one or more unlawful, overt acts; and 5) damages as a proximate result." Tri v. J.T.T., 162 S.W.3d 552, 556 (Tex. 2005).  The conspiracy itself does not give rise to liability in Texas, but rather requires an

underlying act.  See Carroll v. Timmers Chevrolet, Inc., 592 S.W.2d 922, 925 (Tex. 1979).

Therefore, in order to succeed on its conspiracy claim, FSI must first meet its burden of proof on one or more of its underlying tort claims.  Because the court finds factual issues remain on trademark infringement, unfair competition, and dilution, the court also finds that summary judgment for the conspiracy claim is inappropriate at this time.

### IV.  Conclusion

Based on the foregoing, the court **DENIES** FSI's Motion for Summary Judgment.

This case is set for trial on Monday, October 3, 2011, at 9:00 a.m. in Courtroom 700.  The parties are **ORDERED** to submit a joint pretrial order and proposed finding of fact and conclusions no later than 9/26/11. The pretrial conference is set for 9/28/11 at 10:00 a.m. in Courtroom 700.

**SIGNED** in Houston, Texas, this 29th day of July, 2011.

Nancy K. Johnson
United States Magistrate Judge